IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUIS POULSEN A/S,<br><br>*Plaintiff*,<br><br>v.<br><br>THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A",<br><br>*Defendants,* | Case No.: 24-cv-04260<br><br>Judge Jorge L. Alonso<br><br>Magistrate Judge Maria Valdez |

**DEFENDANT LIGHTZEY'S MEMORANDUM IN SUPPORT OF
MOTION FOR ATTORNEY FEES AND COSTS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1
STATEMENT OF FACTS ................................................................................................................. 1
I.      Lightzey's businesses. ........................................................................................................ 1
II.     The allegations of Plaintiff's Complaint. ......................................................................... 2
III.    Lightzey's communications with Plaintiff regarding no U.S. sales. ............................. 2
ARGUMENT ........................................................................................................................................ 8
I.      This is an exceptional case under the Lanham Act because Plaintiff had no evidence of U.S. infringing sales and failed to disclose such a material fact to the Court when moving for the TRO. ............................................................................................................ 9
II.     Failure to disclose adverse facts to obtain an *ex parte* TRO where the adverse facts would have prevented the grant of the TRO is fraud on the Court, and the Court has inherent power to sanction litigants and parties for their dishonesty. ............................ 13
CONCLUSION .................................................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*,
   389 F. Supp. 2d 983 (N.D. Ill. 2005) .............................................................................. 10

*Direct Fitness Sols., LLC v. Direct Fitness Sols., LLC*,
   281 F. Supp. 3d 697 (N.D. Ill. 2017) ......................................................................... 11, 12

*Fuery v. City of Chicago*,
   900 F.3d 450 (7th Cir. 2018) ........................................................................................... 14

*Greyer v. Ill. Dep't of Corr.*,
   933 F.3d 871 (7th Cir. 2019) ........................................................................................... 14

*LHO Chicago River, L.L.C. v. Perillo*,
   942 F.3d 384 (7th Cir. 2019) ............................................................................................. 9

*Matlin v. Spin Master Corp.*,
   921 F.3d 701 (7th Cir. 2019) ........................................................................................... 10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
   572 U.S. 545 (2014) ........................................................................................................... 9

*S Indus., Inc. v. Diamond Multimedia Sys., Inc.*,
   17 F. Supp. 2d 775 (N.D. Ill. 1998) ................................................................................. 12

*S Indus., Inc. v. Stone Age Equip., Inc.*,
   12 F. Supp. 2d 796 (N.D. Ill. 1998) ................................................................................. 13

*Sanders v. Melvin*,
   25 F.4th 475 (7th Cir. 2022) ..................................................................................... 13, 14

*Xped LLC v. Entities Listed on Exhibit 1*,
   690 F. Supp. 3d 831 (N.D. Ill. 2023) ............................................................................... 13

**Statutes**

15 U.S.C. § 1117(a) ............................................................................................................. 9, 15

**Rules**

Ill. Sup. Ct. R. 3.3(a) ............................................................................................................... 14

Ill. Sup. Ct. R. 3.3(d) ............................................................................................................... 14

Ill. Sup. Ct. R. 4.1 ................................................................................................................... 14

**INTRODUCTION**

This case is one of many in the Northern District of Illinois's "cottage industry" of "Schedule A" cases. But it stands out as a case of fraud on the Court, and thus makes it an exceptional case justifying the imposition of attorney fees as a sanction.

Plaintiff Louis Poulsen, A/S ("Plaintiff" or "LP") has now admitted by conduct to the Court that the Temporary Restraining Order ("TRO") against Defendant Lightzey ("Defendant" or "Lightzey") was improperly obtained. Plaintiff never had any facts, in its Complaint or otherwise, sufficient to state claims for any U.S. activities to constitute trademark counterfeiting or infringement, common law trade dress infringement, false designation of origin, violation of the Illinois Uniform Deceptive Trade Practices Act, common law trademark infringement, or civil conspiracy. When the failure of its proofs on these fundamental issues was laid bare, Plaintiff admitted that it had no evidence to support its TRO, but refused to do anything about it. Recognizing that its position was untenable, but still hoping to monetize its improper actions, Plaintiff offered to settle for a low four-figures. Only when faced with the risk of this motion did Plaintiff unilaterally move to dismiss the action underlying the TRO.

Plaintiff's fraud on the Court makes this case "exceptional" under the Lanham Act and the Court should award Lightzey with its damages and its reasonable attorney fees.

**STATEMENT OF FACTS**

**I.  Lightzey's businesses.**

The website https://thelightzey.com/ (the "Lightzey website") is an e-commerce business that sells light products primarily to the U.K. markets. J. Benjamin Bai Declaration ("Bai Decl.") at ¶ 4. The website is owned and operated by Waves HK HOLDINGS LIMITED, a Hong Kong company. *Id.* at ¶ 4. It has no U.S. presence, except that the website is accessible from the U.S.,

including Illinois. A copy of Waves HK HOLDINGS LIMITED's certificate of incorporation is attached as Exhibit ("Ex.") 1 of the J. Benjamin Bai Declaration. *See also id.* at ¶ 4.

## II. The allegations of Plaintiff's Complaint.

Plaintiff filed its Complaint in this case on May 23, 2024. Dkt. No. 1 ("Compl."). Lightzey is not named as a defendant in the body of the Complaint. Instead, Lightzey is named as Doe No. 425 among a long list of defendants in the Complaint's Schedule A, shown below. Compl. at ¶ 2.

| Doe No. | Merchant Name | Merchant ID | Merchant URL |
|---|---|---|---|
| 425 | thelightzey | thelightzey | https://thelightzey.com/ |

The Complaint generally alleges that all Defendants counterfeited and infringed Plaintiff's intellectual property rights listed in Exhibit 1 via online stores. *Id.* at ¶¶ 3-4, Ex. 1. The Complaint does not include any allegation specific to Lightzey, either directly or indirectly, and does not identify any specific infringing products sold by Lightzey to Illinois. *Id.* at ¶¶ 1-74.

With respect to jurisdiction, the Complaint makes the following general statement:

> [T]his Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Illinois, through their operation of or assistance in the operation of the fully interactive, commercial internet stores operating under the Defendant domain names and/or the Defendant Internet Stores identified in Schedule A. Specifically, each of the Defendants directly reaches out to do business with Illinois residents by operating or assisting in the operation of one or more commercial, interactive ecommerce stores that sell counterfeit products infringing Plaintiff's federally registered trademarks and trade dress, and common law trade dress directly to Illinois consumers. In short, each Defendant is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

*Id.* at ¶ 2.

## III. Lightzey's communications with Plaintiff regarding no U.S. sales.

On July 15, 2024, Lightzey found that its PayPal account for processing payments for the Lightzey website was frozen. The account's balance was $185,013.44 at the time, with a note that

this account was frozen due to the TRO. Bai Decl. ¶ 5. Lightzey sought help from various sources and engaged legal counsel on July 22. Through counsel, Lightzey emailed Plaintiff on July 22, asking for Plaintiff's evidence that supported its claims against Lightzey. *Id.* at ¶ 6, Ex. 3.

On July 24, 2024, Plaintiff provided Lightzey with a copy of the sealed Complaint and TRO. *Id.* at ¶ 7. Neither of these documents includes any evidence of infringing sales by Lightzey to Illinois specifically or the U.S. generally. Lightzey promptly pointed out these deficiencies and asked Plaintiff to provide its specific evidence supporting the allegations. *Id.* at ¶ 7. In response, Plaintiff provided three pictures (screenshots) from Lightzey's website that were purportedly the basis for the allegations in Plaintiff's Complaint. *Id.* at ¶ 8.

The three pictures (reproduced below), however, do not support Plaintiff's allegations. *See id.* at Ex. 4. On its face, Plaintiff's evidence demonstrates that a purportedly infringing product, the Umbrella Pendant Light, could be put into an online cart by a Chicago, Illinois resident; but the actual order for that product was not consummated or ever shipped to Chicago, Illinois. The pictures demonstrate that Plaintiff knew its evidence was insufficient to support its infringement allegations, as they show Plaintiff purchased and delivered to an Illinois address a non-infringing product to mask the jurisdictional shortfall.

| **Picture 1** Labeled by Plaintiff as "Other---thelightzey---2d3030674-1" |  |
|---|---|

3



| Picture 2 Labeled by Plaintiff as "Other---thelightzey---2d3030674-POS" | |
|---|---|
| Picture 3 Labeled by Plaintiff as "Other---thelightzey---2d3030674---Vruvozozar-TB" | |

      Picture 1 purports to show one particular light, the Miranda Macron Umbrella Pendant Light. Plaintiff alleges that the Umbrella Pendant Light infringes its rights. Picture 2 purports to show that a Miles Parker, with a Chicago, Illinois address, put in an order for that Umbrella Pendant Light. However, Plaintiff provides no evidence that Mr. Parker's order was completed, that any money was paid, or that any such product was shipped to Illinois or the U.S. Instead, as shown in Plaintiff's Picture 3, a cheaper, non-infringing product (i.e., a candle holder) for GBP 49.99 was ordered, paid and shipped to an address in Romeoville, Illinois.

      Although the purported evidence should have made the issues clear to Plaintiff, Lightzey promptly pointed out to Plaintiff on July 25, 2024 that the evidence does not support a charge of infringement in the U.S. or the Court's personal jurisdiction over Lightzey, and there was no factual support for the TRO. *See* Bai Decl. at ¶ 9, Ex. 5. In the face of these clear facts and the

misrepresentations that were made to the Court, Lightzey urged Plaintiff to take corrective action to withdraw the TRO. *Id.* at ¶ 9, Ex. 5. The attorney fees incurred up to July 25 were about $7K. *Id.* at ¶ 9, Ex. 3 at 1.

After waiting more than a week for a response, Lightzey followed up on August 5, 2024 via email to again confirm that Lightzey made no sale of the Umbrella Pendant Light in Picture 1 to the U.S. and that the Court has no jurisdiction over Lightzey, and to ask Plaintiff to take corrective action with regards to the TRO. *Id.* at ¶ 10.

After waiting an additional three weeks, on August 27, 2024, Lightzey sent another follow-up email to Plaintiff stating the following:

> It has been three weeks since my last email below. Based on the facts I provided in previous emails, it should have been crystal clear that you obtained a TRO against the owner of the thelightzey site (i.e., Waves HK Holdings Limited) on erroneous facts. Specifically, you did not have any infringing evidence to support the TRO. Being an officer of the court, you have a duty to inform the court of your mistakes. We think you should take prompt action to correct the them. If you fail to do so before September 3, 2024, we will have no choice but to move to lift your TRO and ask the court to award attorney fees in connection with our efforts to correct your mistakes. Of course, unfreezing our client's PayPal account is the first step in the right direction. Your cooperation is appreciated.

*Id.* at ¶ 11.

Only with this threat of fees did Plaintiff respond; but in its August 29, 2024 response, Plaintiff ignored Lightzey's request to correct Plaintiff's mistake and instead insisted on receiving screenshots of the sales information for the Umbrella Pendant Light. *Id.* at ¶ 6, Ex. 3 at 13. In a subsequent communication, Plaintiff explained that Picture 3 was actually "an irrelevant screenshot" that purportedly was mistakenly placed in the wrong folder. *Id.* at ¶ 6, Ex. 3 at 11. Avoiding any discussion about the impropriety of its TRO or its lack of any evidence to support it, Plaintiff asked for informal discovery about Lightzey's sales. In an apparent bid to avoid its

5

impropriety and the issue being raised with the Court, Plaintiff provided what it likely considered a low-ball demand in the hopes that it would resolve the dispute. Plaintiff wrote:

> It seems the team mistakenly included an irrelevant screenshot in the evidence folder. Apologies for the confusion—the screenshot of the candle holder order was intended for internal use only, to confirm that products from this website can be shipped to Illinois. The actual accused product is the Umbrella Pendant Light.
>
> I've discussed the matter with the client, and we're willing to agree to the defendant's request to share evidence under the protection of Rule 408. They hope to first confirm whether there are any US sales. Otherwise, the best I can persuade the client to agree to is to settle for $2,000. We look forward to hearing from you.

Bai Decl. at ¶ 6, Ex. 3 at 11.

The next day, on August 30, counsel for Lightzey wrote to Plaintiff, rejecting its demand:

> Thanks for your prompt response. As I said in my last email, there are two separate issues. I will write separately on the info relating to US sales, which I informed your firm early on in this case – there is NOT a single sale to the U.S., let alone to Illinois.
>
> Urgently and importantly, the more serious issue is that your firm obtained a TRO against our client and froze their PayPal account without a scintilla of evidence on infringement and jurisdiction.
>
> 1. Your first piece of evidence shows that a Miles Parker was able to place an order. However, you know that order was NOT completed. No product was ever shipped.
> 2. Your second piece of evidence (which now you claim was "mistakenly" included) shows a non-infringement product was ordered which was indeed shipped to Illinois.
>
> You must understand that internet jurisdiction over a foreign defendant cannot be based on the mere presence of a website. The mere possibility of ordering an infringing product from a site does not suffice. There must be at least one infringing product shipped from the site to Illinois for the NDIL to have jurisdiction. The attached case suggests that there must be a substantial quantity of infringing products being shipped to the forum state. But that is an issue for another day.
>
> ***You must know that you have no evidence for even one infringing product being shipped to Illinois. However, you went to court and obtained a TRO against our client. Again, being an officer of the court, you are under a duty to immediately dissolve the TRO. If you fail to do it, we will file a motion to dissolve the TRO after September 3, 2024. And we will seek attorney fees.***

6

*Id.* at ¶ 12 (emphasis added). The next day, Plaintiff insisted on receiving the Umbrella Pendant Light sales information and provided a short settlement agreement that included a covenant by Lightzey not to sue Plaintiff. On September 1, Lightzey provided screenshots that prove no U.S. sales of the Umbrella Pendant Light in the following email:

> Dear Counsel,
>
> I attached a screenshot of the client's account showing no sale to the U.S. The search criteria are 1) U.S. as the country and 2) wv802 as the product identifier for the Umbrella Pendant Light  As you can see, there is no data, meaning that there is no sale whatsoever. This is consistent with what I have been telling you.
>
> ***For good records, I also attached a series of emails from me to you to remind you that you were on notice on or about July 24-25, 2025 regarding the lack of factual support for the TRO against our client. There, I urged you to take corrective action. After repeated reminders and requests, you still have not done the right thing as an officer of the court. You don't need me to remind your duty of honesty to the court and not to mislead the court. You also have a duty to correct untrue facts previously presented to the court. Therefore, we repeat our final request that you immediately dissolve the TRO by September 3, 2024. Failing that, we will file a motion to lift it. And we will seek attorney fees.***
>
> To be clear, the client is not interesting in signing any undertaking. Your dismissal of the TRO is to correct your wrong and must NOT be conditional.

*Id.* at ¶¶ 13-14 (emphasis added).

On September 2, 2024, more than 3 months after the filing of the Complaint and more than 1 month after Lightzey raised the impropriety of the TRO, Plaintiff filed a notice of dismissal with prejudice against Lightzey. *See* Dkt. No. 55. Plaintiff never provided any corrected screenshots or other evidence supporting its Complaint allegations or justifying its pursuit of an *ex parte* TRO. Bai Decl. at ¶ 15. On September 5, Defendant's counsel wrote to Plaintiff's counsel, seeking a settlement with respect to Defendant's legal fees and damages in the following email:

> Dear Counsel,
>
> Thanks for taking the first step to remedy your mistakes. However, ***this TRO should never have been brought against our client (i.e., your Defendant Doe #425). You knew you had no evidence of infringing products being shipped to the***

7

> *forum state when you sought the TRO. I repeatedly pointed out this defects and urged you to do the right thing. All the legal fees incurred by my client could have been avoided. Now we have about $55-60K on the clock. The client has also suffered economic losses due to the freezing of the funds in their PayPal account. They are in the process of assessing the number.*
>
> I attach a NDIL case and a NDIL court order for your reference. Let's discuss a settlement and avoid unnecessary litigation. We can hold a settlement conference or do so via email. Please let us know what you prefer.
>
> BTW, my rate for this case is $1100/hour; and Mr. Keller's is $1200/hour. The sooner the clock stops, the better for everyone.

*Id.* at ¶ 16 (emphasis added).

In subsequent emails, Plaintiff's counsel declined to discuss and refused Lightzey's demand for Plaintiff to pay for Lightzey's attorney fees. *Id.* at ¶¶ 17-18. On September 26, Defendant's counsel wrote to Plaintiff's counsel about why this case should be found "exceptional" under the Lanham Act. *Id.* at ¶ 19. This precipitated this Motion for Attorney Fees.

## **ARGUMENT**

This case should never have been brought against Lightzey and certainly not with a TRO request. From Plaintiff's own "evidence," it is clear and undisputed that no infringing product was sold to Illinois, and Plaintiff knew of this fact (that was not shared with the Court) when it decided to mask the shortfall by buying a non-infringing product from Lightzey and shipping it to Illinois.

Plaintiff never had a plausible basis to allege that Lightzey sold an infringing product to Illinois nor justification for an *ex parte* TRO. Only when faced with possible sanctions did Plaintiff willingly discuss these deficiencies, but still refused to take corrective action when it admitted it had no evidence to support its claims. Plaintiff even suggested that its unsupported claims could be resolved by a payment of $2K by Lightzey. Finally, realizing Lightzey was not going to back down, Plaintiff demonstrated the full scope of its improper conduct by unilaterally dismissing the

8

Complaint and its false allegations with prejudice. These actions and inactions by Plaintiff make it an "exceptional case" under the Lanham Act. Lightzey is entitled to its attorney fees and costs.

**I.      This is an exceptional case under the Lanham Act because Plaintiff had no evidence of U.S. infringing sales and failed to disclose such a material fact to the Court when moving for the TRO.**

The Lanham Act states that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). In 2019, following the Supreme Court's analysis of identical language in the Patent Act in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), the Seventh Circuit held that an "exceptional" case under the Lanham Act "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *LHO Chicago River, L.L.C. v. Perillo*, 942 F.3d 384, 386 (7th Cir. 2019) (quoting *Octane*, 572 U.S. at 554). Before *LHO*, the Seventh Circuit applied a more rigid standard requiring a prevailing party show an "abuse of process," occurring "when a litigant pursues an objectively unreasonable claim to extort or inflict disproportionate costs on his opponent, or when a party brings a frivolous claim for external gain." *Id.* at 387. Here, Plaintiff's litigation conduct demonstrates an egregious abuse of process, entitling Lightzey to attorney fees under the former abrogated standard, and *a fortiori* entitling Lightzey to attorney fees under the more flexible standard adopted by *LHO*.

First, this case "stands out" for Plaintiff's disregard of the facts and efforts to side step them. As Plaintiff knew, Plaintiff needed to prove that Lightzey sold infringing products to Illinois to trigger the Court's jurisdiction. As Plaintiff's own purported evidence demonstrates, on its face, Plaintiff never had any such evidence to support jurisdiction over Lightzey. Specifically, Plaintiff knew that the order for the Miranda Macron Umbrella Pendant light was not completed and therefore could not have been shipped to Chicago, Illinois. Bai Decl. at ¶ 8, Ex. 4. Specifically,

9

Picture 2 is labeled by as "Other---thelightzey---2d3030674-POS."  Presumably, "POS" stands for Point of Sale.  In contract, Picture 3 is a screenshot of a completed order.  Clearly, Plaintiff knows the difference between POS (which is not a completed transaction) and a completed order.

Without evidence that an infringing product was sold to Illinois, this Court has no jurisdiction over a foreign defendant.[1]  This is because jurisdiction cannot be based on a contact that did not exist when Plaintiff sued.  *See Matlin v. Spin Master Corp.*, 921 F.3d 701, 707 (7th Cir. 2019).  Therefore, Plaintiff lacked factual basis for bringing this lawsuit against Lightzey.

This glaring deficiency was made worse by Plaintiff's effort to mask that deficiency by purchasing a different, non-infringing product, and using the shipment of that non-infringing product to Illinois as the basis for jurisdiction.  Plaintiff knew that this was insufficient, and later admitted that it was a mistake.  Bai Decl. at ¶ 8, Ex. 4, Ex. 3 at 11.

Even under the former more rigid standard, when a plaintiff brings a trademark infringement lawsuit that "complete[ly] lack[s] . . . any evidence" of an element necessary to prove infringement, the case is exceptional and the defendant should be awarded attorney fees.  *See Bretford Mfg., Inc. v. Smith Sys. Mfg. Co.*, 389 F. Supp. 2d 983, 986 (N.D. Ill. 2005).

Second, this case is exceptional because of the unreasonable manner in which Plaintiff has litigated this case:  by abusing the Court's *ex parte* procedures using fraudulent misrepresentations of Plaintiff's evidence in order to obtain an unwarranted TRO, with the goal of extorting a

---

[1] In a similar case, this Court recently denied plaintiffs' motion for entry of TRO, explaining:

> Although this Court routinely exercises personal jurisdiction over foreign companies that, in fact, sell allegedly infringing products to residents of Illinois via fully interactive websites operating here, Plaintiffs do not allege such conduct here, and Plaintiffs' claims do not stem from any sales (or other conduct) by Defendant within this district or within the state.

*Shenzhen Huanyusheng Tech. Co., Ltd. v. MAVIR*, No. 1:24-cv-08789 (N.D. Ill. Oct. 1, 2024) (Dkt. No. 7; order attached as Ex. 7).

settlement from Lightzey. Clearly, Plaintiff filed and obtained an *ex parte* TRO based on misrepresentations to the Court as to its evidence. Bai Decl. at ¶ 8, Ex. 4, Ex. 3 at 11. And Plaintiff submitted papers in sealed *ex parte* proceedings, causing the Court to enter a TRO against Lightzey without ever giving Lightzey an opportunity to respond to Plaintiff's allegations. Once Lightzey responded to Plaintiff's allegations, it became clear that Plaintiff had no basis for its claim. *Id.* at ¶¶ 8-9, Ex. 4, Ex. 5 at 1. Then, after Plaintiff was told by Lightzey that it lacked evidence to support the TRO, Plaintiff still persisted, forcing Lightzey to spend additional fees in convincing Plaintiff to do the right thing. *Id.* at ¶ 9. Plaintiff appeared to have admitted its error on September 2, 2024, when it filed a Notice of Dismissal listing Lightzey. *See* Dkt. No. 55. The dismissal does not correct Plaintiff's past improper behavior, but rather, confirms how improper those actions actually were. Bai Decl. at ¶ 19, Ex. 3 at 1.

This case also is exceptional because of Plaintiff's efforts to effectively buy its way out of the matter before dismissing the matter with prejudice. When Plaintiff was faced with Lightzey's threat of sanctions, Plaintiff sought to get rid of the issues, through a settlement and a release of all claims, by suggesting a payment of $2K would resolve the matter. Bai Decl. at ¶ 6, Ex. 3 at 11. This modest offer was plainly provided in the hopes that Lightzey would accept it, and Plaintiff would avoid the current issues. Using the *ex parte* process with no evidence and then trying to buy its way out of the ramifications of its bad behavior is unacceptable.

This Court has awarded attorney fees to prevailing defendants against similar but less abusive litigation conduct. In *Direct Fitness Solutions, LLC v. Direct Fitness Solutions, LLC*, the plaintiff attempted to extort the defendant by sending a cease and desist letter demanding $50K for a baseless claim of infringement, and then filed suit in the Northern District of Illinois without adequate evidence of personal injunction to force the Florida-based defendant to incur unnecessary

11

costs of litigating in Illinois. 281 F. Supp. 3d 697, 701 (N.D. Ill. 2017). Based on the combination of "the absence of factual or legal support for plaintiff's theories, coupled with plaintiff's distinctly coercive pre-litigation tactics," the Court found the case to be exceptional and awarded the defendant its attorney fees. *Id.* at 701. Plaintiff's tactics here are even more abusive and deserving of sanction: not only did Plaintiff force Lightzey, a non-U.S. company to incur unnecessary legal fees in defense against factually baseless claims, Plaintiff obtained an *ex parte* TRO against Lightzey imposing significant financial damage on Lightzey in order to extort a settlement.

Similarly, this Court in *S Industies, Inc. v. Diamond Multimedia Systems, Inc.* awarded attorney fees to a prevailing defendant where the plaintiff had embarked on a campaign to file frivolous lawsuits against a large number of defendants in the hopes of extorting lucrative settlements. 17 F. Supp. 2d 775, 778 (N.D. Ill. 1998). In awarding attorney fees to that defendant, the Court noted that the plaintiff had filed similarly frivolous suits against numerous other defendants. *Id.* (The plaintiff "appears to have entered into a new industry—that of instituting federal litigation."). The Court then observed that even though the litigation was "patently frivolous," the plaintiff "entangled eight retail customers of [defendant] in this litigation thereby threatening [defendant's] business and increasing the likelihood of extracting a settlement. [Plaintiff] has apparently taken a legitimate procedure designed to protect trademark rights and turned into [sic] a means of judicial extortion." *Id.* at 778-79.

Plaintiff has done the exact same thing here: taken a legitimate procedure designed to protect trademark rights and turned it into a means of judicial extortion. Plaintiff filed a canned complaint against more than four hundred different defendants, obtained an *ex parte* TRO including the extreme and unusual remedy of an asset freeze against them based on numerous misrepresentations filed under seal, and proceeded to extort settlements from the defendants. In

this instance, Plaintiff offered low settlement demands when faced with its bad behavior in a plain attempt to avoid the issues being aired. Bai Decl. at ¶ 6, Ex. 3 at 11.

In its Complaint and TRO pleadings, Plaintiff artfully misled the Court to believe that there was infringing sale to Illinois, but Lightzey never sold infringing products to U.S., let alone Illinois. In another S Industries lawsuit, *S Industries, Inc. v. Stone Age Equipment, Inc.*, this Court awarded attorney fees to the prevailing defendant and stated it "can think of few suits more oppressive, or few cases more exceptional, than this." 12 F. Supp. 2d 796, 820 (N.D. Ill. 1998). Although S Industries asserted frivolous trademark infringement lawsuits, it did not abuse this Court's *ex parte* procedures, unlike Plaintiff here. This Court should accordingly award Lightzey its reasonable attorney fees.

"[A]warding attorney's fees is appropriate and necessary to deter future misconduct by parties and their counsel in the future." *Xped LLC v. Entities Listed on Exhibit 1*, 690 F. Supp. 3d 831, 859 (N.D. Ill. 2023) . "[A]warding attorney's fees" is especially "critical for deterrence due to the *ex parte* nature of the TRO proceedings and the fast pace of the preliminary injunction proceedings." *Id.* "If plaintiffs or their attorneys commit fraud on the Court or misrepresent the facts to obtain preliminary injunctive relief, it will be difficult to detect and sanction misconduct without the participation of attorneys on the other side." *Id.* Ultimately, it is "necessary to incentivize defendants to" bring this type of misconduct to the Court's attention on an expedited basis. *Id.* at 859-60. "Awarding attorney's fees provides this incentive because it makes fighting rather than giving up a more financially viable choice." *Id.* at 860

**II. Failure to disclose adverse facts to obtain an *ex parte* TRO where the adverse facts would have prevented the grant of the TRO is fraud on the Court, and the Court has inherent power to sanction litigants and parties for their dishonesty.**

Federal district courts have the inherent power to sanction litigants and attorneys. *See Sanders v. Melvin*, 25 F.4th 475, 481 (7th Cir. 2022). Sanctions "punish[] a party's dishonesty

13

and deter[] others who might consider similar misconduct." *Sanders*, 25 F.4th at 482. Committing fraud on the court and pursuing arguments in bad faith are sanctionable misconduct. *See id*. at 481; *Fuery v. City of Chicago*, 900 F.3d 450, 463 (7th Cir. 2018). To sanction a party for fraud on the court requires a finding of intentional and material misrepresentations or omissions. *See Greyer v. Ill. Dep't of Corr*., 933 F.3d 871, 877-78 (7th Cir. 2019).

When seeking an *ex parte* TRO, Illinois attorneys owe a heightened duty of candor towards the court. *See* Ill. Sup. Ct. R. 3.3(d) ("In an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, ***whether or not the facts are adverse***.") (emphasis added). Illinois Supreme Court Rules 3.3(a)(1) and (3) prohibit "false statement[s] of fact or law to a tribunal," impose the duty to "correct a false statement," and forbid "offer[ing] evidence that the lawyer knows to be false." Illinois Supreme Court Rule 4.1 commands "truthfulness in statements to others," enjoining attorneys to not "make a false statement of material fact or law to a third person." Plaintiff's counsel violated these rules in filing the Complaint and obtaining the TRO and subsequent preliminary injunction, knowing full well that there is no evidence to support jurisdiction over Lightzey.

Here, the adverse facts are: 1) the Umbrella Pendant Light order was not completed; 2) no Umbrella Pendant Light was shipped to Chicago, Illinois; and 3) the candle holder was indeed shipped to Illinois, which would have triggered the Court's jurisdiction if infringing; but even Plaintiff conceded that the candle holder is not infringing. Bai Decl. at ¶ 8, Ex. 4, Ex. 3 at 11. A TRO would not have been issued based on these facts. In granting the TRO, the Court relied on Plaintiff's evidence in the absence of adversarial presentation. Dkt. No. 15 at 2 ("In this case, Plaintiff has presented screenshot evidence that each Defendant e-commerce store is reaching out to do business with Illinois residents by operating one or more commercial, interactive internet

14

stores through which Illinois residents can and do purchase products using counterfeit versions of the Plaintiff Trademarks.") Apparently, Plaintiff intentionally failed to disclose these materials facts to obtain the TRO, committing fraud on the Court. It stubbornly refused to take corrective actions for about a month when repeatedly urged by Defendant's counsel. Bai Decl. at ¶ 8, Ex. 4, Ex. 3 at 1. Plaintiff was given ample opportunities by Defendant to do the right thing but refused to do so for at least a month, thereby jacking up Defendant's legal fees from about $7K to about $60K. *Id.* at ¶ 9, Ex. 4, Ex. 3 at 1. Plaintiff could have avoided this Motion for Attorney Fees by accepting Defendant's proposal to settle all claims for $60K, but Plaintiff refused. *Id.* at ¶¶ 17-18, Ex. 3 at 1. Defendant has no choice but to seek judicial relief, thereby incurring more legal fees. *Id.* at ¶ 6, Ex. 3 at 1. This willful litigation misconduct is reprehensive and should be punished and deterred. The proper administration of justice requires lawyers to fulfil their duty of candor to the tribunal. Public interest is jeopardized when lawyers fail to perform such duty.

For these reasons, awarding attorney fees in this case is both appropriate and necessary to deter future misconduct by parties and their counsel in the future.

## **CONCLUSION**

Plaintiff brought a Complaint for trademark infringement and obtained an *ex parte* TRO based on factual contentions that Lightzey infringed Plaintiff's trademark and other IP rights in the U.S. It is now clear that Plaintiff had no such evidence and knew it did not have such evidence.

Plaintiff never had a factual basis for its claims against Lightzey, and there is no dispute as to that fact. What is worse is that Plaintiff knew about that deficiency, failed to disclosed it to the Court, and obtained a TRO that may never been granted if the truth was shared. This is fraud on the Court. Therefore, the Court should declare this case exceptional under 15 U.S.C. § 1117(a), and award Lightzey the reasonable attorney fees and costs it has incurred in defending against this frivolous and extortionate lawsuit.

        Respectfully submitted,

        Lightzey

Dated: October 7, 2024       By: /s/ *J. Benjamin Bai*

        Benjamin Bai
        King & Wood Mallesons LLP
        500 Fifth Avenue, 50th Floor
        New York NY 10110
        212 319 4755 (phone)
        917 591 8167 (fax)
        benjamin.bai@cn.kwm.com

        Paul Keller (pro hoc vice pending)
        Crowell & Moring
        Two Manhattan West
        375 Ninth Avenue
        New York, NY 10001
        212.895.4214 (phone)
        202.628.5116 (fax)
        PKeller@crowell.com

        Elissa N. Tenenbaum
        Crowell & Moring
        455 N. Cityfront Plaza Drive
        Suite 3600
        Chicago, IL 60611
        312.840.3283 (phone)
        312 321 4299 (fax)
        ETenenbaum@crowell.com

        Counsel for Defendant
        Lightzey

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2024, a copy of the foregoing was served on counsel of record by electronic means pursuant to the court's Electronic Case Filing (ECF) system.

*/s/ J. Benjamin Bai*
