**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS-EASTERN DIVISION**

LOUIS POULSEN A/S,

                    Plaintiff,

          v.

THELIGHTZEY,

                    Defendants.

No. 24-cv-4260

Judge Jorge L. Alonso
Magistrate Judge Maria Valdez

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR ATTORNEYS'
FEES**

1

## TABLE OF CONTENTS

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................................. 5

II. STATEMENT OF FACTS ............................................................................ 6

III. ARGUMENT ............................................................................................ 9

A. LEGAL STANDARD ................................................................................ 9

B. THIS CASE IS NOT "EXCEPTIONAL" UNDER ESTABLISHED LAW ............................ 10

    1. *Substantive Strength of Litigation*.................................................... 11

    2. *Defendant Used Plaintiff's Trademark in the United States* ............................ 11

    3. *Defendant's Motion Conflates Infringement and Personal Jurisdiction*.......... 13

B. PLAINTIFF DID NOT ENGAGE IN UNREASONABLE MANNER OF LITIGATION ........... 15

    1. *There Was No Abuse of Process* ........................................................ 15

    2. *Plaintiff Acted in Good Faith in Obtaining TRO*................................ 18

C. ATTORNEY'S FEES REQUESTED ARE UNREASONABLE ........................................... 20

    1. *Defendant Claims Unreasonably High Hourly Rates*........................................ 21

    2. *The claimed Hours expended by Defendant's Counsel Are Unreasonable*...... 23

IV. CONCLUSION .......................................................................................... 29

## **TABLE OF AUTHORITIES**

### **Supreme Court Cases**

*Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158 (2015) ........................................................ 9

*Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010) .................................................. 9

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559 (2014) .................................... 10

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014) ....................... 6, 9, 10

### **Court of Appeal Cases**

*Bell v. United Princeton Properties, Inc.,* 884 F.3d 713 (3d Cir. 1989) ...................................... 22

*Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2010) ...................................................... 13, 14

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427 (7th Cir. 1999) ........ 11, 13

*LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962 (7th Cir. 2021) .................. 9

*Montanez v. Simon*, 755 F.3d 547 (7th Cir. 2014) ...................................................................... 21

*NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624-625 (7th Cir. 2022) ........................... 13, 14

*Pace v. Timmermann's Ranch & Saddle Shop Inc.,* 795 F.3d 748 (7th Cir. 2015) ..................... 15

*Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632 (7th Cir. 2011) ......................................... 21

*Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852 (7th Cir. 2009) .... 23

*Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544 (7th Cir. 1999) .................................................. 21

*T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372 (Fed. Cir. 1996) ............................................ 11

*Ty, Inc. v. The Jones Grp., Inc.*, 237 F.3d 895 (7th Cir. 2001) .................................................. 19

### **District Court Cases**

*Eagle Forum v. Phyllis Schlafly's American Eagles,* 498 F. Supp. 3d 1024 (S.D. Ill. 2020) ...... 24

*Expeditee LLC v. Entities Listed on Exhibit 1*, 21 C 6440, 2022 WL 1556381 (N.D. Ill. May 17,

2022) .......................................................................................................................... 10

*Gao v. P'ships & Unincorporated Ass'ns Identified on Sched. "A,"* 21-CV-4055, 2022 WL 1028926 (N.D. Ill. Apr. 4, 2022) ............................................ 16

*Hirsch v. Will Cnty.*, 19 CV 7398, 2023 WL 6809609 (N.D. Ill. Oct. 15, 2023) ................. 20, 23

*Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839 (N.D. Ill. 2014)................................ 9

*Jergenson v. Inhale Int'l Ltd.*, 22 CV 2040, 2023 WL 8935005 (N.D. Ill. Dec. 27, 2023) ......... 10

*Johansen v. Wexford Health Sources*, No. 15-CV-2376, 2021 WL 1103349 (N.D. Ill. Mar. 23, 2021) ............................................................................................................ 23

*Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777 (N.D. Ill. 2010) ............................................................................................................ 11, 14

*Melikhov v. Drab*, No. 16 C 9332, 2018 WL 3190824 (N.D. Ill. May 21, 2018) ................. 21, 23

## State Court Cases

*Kumar v. Bornstein,* 354 Ill. App. 3d 159 (2004) ................................................... 15, 16

*Neurosurgery & Spine Surgery, S.C. v. Goldman,* 760 N. E.2d. 925 (Ill. App. 2003)................. 16

## Statutes

15 U.S.C. § 1114(1)(a)............................................................................ 11, 14, 17

15 U.S.C. § 1117(a) .................................................................................. 5, 9, 29

## Rules and Regulations

Fed. R. Civ P. 9(b) .......................................................................................... 18

Fed. R. Civ. R. 41(a)(1) ...................................................................................... 5

## Treatises

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (4th ed. 1997)........ 14

4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition (5th ed. 2022)........ 14

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**MOTION FOR ATTORNEYS' FEES**

Pursuant to the Court's Minute Order entered on October 23 [78], Plaintiff Louis Poulsen A/S ("Plaintiff"), through its undersigned counsel, respectfully submits this Response to Defendant's Motion for Attorney's Fees and Costs [68].

## I.     INTRODUCTION AND SUMMARY OF ARGUMENT

On May 23, 2024, Plaintiff filed this lawsuit against 436 defendants including Defendant Lightzey ("Defendant" or "Lightzey"), to combat the mass counterfeiting of its trademarks [1, 5]. At the outset of this case, and throughout its progression, Plaintiff had no knowledge of the extent of Lightzey's sales until it was disclosed by Defendant, because Lightzey operates its own online store rather than selling through a third-party e-commerce platform; the latter is more often the case in mass IP infringement matters. The case against Lightzey was subsequently dismissed on September 9, 2024, when Plaintiff filed Plaintiff's Notice of Voluntary Dismissal [55] pursuant to Fed. R. Civ. R. 41(a)(1), upon Defendant's production of screenshot evidence showing there were no sales to the United States.

Defendant, despite being an infringer and counterfeiter, now seeks attorney's fees under 15 U.S.C. § 1117(a), claiming that the case is "exceptional" under the Lanham Act and that Plaintiff pursued it without evidence of infringing sales in the United States. *See* Mot. for Attorney's Fees and Costs [68] ("Motion"). Defendant's arguments lack merit. Plaintiff did not misrepresent facts to obtain a Temporary Restraining Order (TRO); Plaintiff did not improperly use the TRO to freeze Defendant's PayPal account; nor did Plaintiff attempt to extort a settlement.

Defendant's motion conflates two separate legal concepts: (1) whether there was infringement under the Lanham Act, and (2) whether the Court had personal jurisdiction over Defendant. Plaintiff objects to Defendant's motion on the basis that this is not an "exceptional"

case under *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545 (2014), as it was pursued in good faith. The evidence Plaintiff submitted to the Court on May 23, 2023 [8-4 to 8-21] — screenshots of internet advertisements of accused products and potential sales to Illinois — was sufficient to justify filing the lawsuit and obtaining the TRO. Plaintiff promptly dismissed the case against Defendant once Defendant provided evidence that no infringing sales of the accused product had been completed in the U.S. *See* Declaration of Ying Chen ("Chen Decl."), ¶ 6. The $2,000 settlement offer, within an email discussion chain wherein Defendant initially did not provide evidence of its lack of sales, was a good-faith attempt to resolve the dispute amicably in case Defendant would remain unwilling to provide the sales information. It was not an act of bad faith or any attempt at extortion. *Id*. ¶ 3.

## II.    STATEMENT OF FACTS

Plaintiff, a Danish public limited company based in Copenhagen K, Denmark, is renowned for designing, manufacturing, and selling a wide range of high-quality luxury indoor and outdoor lighting fixtures and accessories. Sealed Complaint [5] ("Compl.") ¶ 5. Plaintiff holds various trademark registrations, including one for its distinctive PH5 Pendant fixture (hereinafter "PH5 Trade Dress") as shown in the following:

| Registration No. | Trade Dress | Goods and Services |
|---|---|---|
| 6,703,937 |  | **CLASS 11**: Lighting apparatus, namely, pendant lamps |

*Id*. ¶ 11.

On May 23, 2024, Plaintiff filed this lawsuit against defendants listed in Schedule A to the Complaint, including Defendant Lightzey [1, 5]. Concurrently, Plaintiff sought a Temporary Restraining Order ("TRO") based on evidence that Defendant's online storefronts, accessible to

U.S. consumers, including those in Illinois, had been advertising and offering for sale counterfeit products that infringed Plaintiff's registered trademarks and trade dress. Plaintiff submitted screenshots [8-21] demonstrating Defendant's marketing of counterfeit products, and the TRO was granted by this Court on May 30, 2024 [7, 8].

Plaintiff's claims were based on a reasonable belief that Lightzey's actions were likely to cause consumer confusion regarding the origin of the goods. Plaintiff forwarded the screenshot evidence to Lightzey on August 5, 2024, at the request of this Defendant's counsel, showing that Lightzey was at least advertising and offering products that infringed the PH5 Trade Dress. Chen Decl., ¶2.





Lightzey responded that no sales of the accused products were completed in the United States. Chen Decl., ¶ 4. Lightzey did not deny offering the accused product for sale to U.S. consumers or challenge the underlying infringement allegations. *Id.* To resolve the matter efficiently, Plaintiff proposed a $2,000 settlement on August 29, 2024 to Defendant as an alternative to providing sales evidence. *Id.* ¶ 3. Defendant finally provided the requested evidence on August 31, 2024, confirming no U.S. sales, rather than accepting the offered settlement. *Id.* ¶ 5. Upon receiving the single page evidence from Lightzey's counsel, Plaintiff promptly filed a Notice of Voluntary Dismissal on September 2, 2024 [55], once it confirmed that the infringing listing had been taken down and that no U.S. sales had occurred. *Id.* ¶ 6.

Plaintiff's primary goal in this litigation is to stop counterfeiting activities, and its voluntary dismissal of Defendant Lightzey was intended to avoid unnecessary litigation and reduce further expenses. Despite Plaintiff's prompt, voluntary dismissal upon receiving Defendant's clarifying information, Defendant filed a motion for attorney fees on October 7, 2024 [68], arguing that the

case was "exceptional". Plaintiff's conduct throughout the litigation was reasonable under existing Seventh Circuit law, focused on stopping infringement, and undertaken in good faith.[1]

## III.     ARGUMENT

### A.  Legal Standard

The Court's "basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242 (2010)). The Lanham Act provides such an exception to the American Rule. "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

By definition, "exceptional" means "uncommon," "rare," or "not ordinary." *Intellect Wireless, Inc. v. Sharp Corp.*, 45 F. Supp. 3d 839, 848 (N.D. Ill. 2014) (internal quotation marks omitted) . When analyzing whether a case is "exceptional" for purposes of awarding attorney's fees under the Lanham Act, courts consider the substantive strength of a party's litigation position and whether the manner in which the case was litigated was unreasonable. *LHO Chicago River, L.L.C. v. Rosemoor Suites, LLC*, 988 F.3d 962, 967 (7th Cir. 2021); *see also Octane*, 572 U.S. at 554. The district court is afforded broad discretion in determining whether a case is "exceptional." *Octane*, 572 U.S. at 554. It is a case-by-case determination "considering the totality of the circumstances." *Id*.

While "there is no precise rule or formula," the district court "could consider a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness

---

[1] The truly egregious conduct in this matter is discussed in Section III.C.

(both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.' " *Id*. at 554 (quoting *Fogerty v. Fantasy, Inc*., 510 U.S. 517, 534 & n.19 (1994)). District courts are uniquely suited to determine whether the case "stands out from others," "because it lives with the case over a prolonged period of time." *Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 564 (2014).

Courts in this district have consistently held that the absence of U.S. sales alone is not sufficient grounds for awarding attorney's fees. *See Expeditee LLC v. Entities Listed on Exhibit 1*, 21 C 6440, 2022 WL 1556381, at *6 (N.D. Ill. May 17, 2022) (the court denied the Moving Defendants' motion for an exceptional case designation, despite declining to exercise personal jurisdiction over them due to the lack of sales in Illinois); *see also Jergenson v. Inhale Int'l Ltd*., 22 CV 2040, 2023 WL 8935005, at *3 (N.D. Ill. Dec. 27, 2023) (the Court denied to award the attorney's fees because Plaintiff had no knowledge of the number of sales at the outset of matter), aff'd, 24-1177, 2024 WL 4430531 (7th Cir. Oct. 7, 2024).

**B. This Case Is Not "Exceptional" Under Established Law.**

A party requesting fees under the Lanham Act bears the burden of proving by a preponderance of the evidence that the case is "exceptional" to warrant an award of attorney's fees. *See Octane*, 572 U.S. at 557-58. Lightzey's purported proof that this case is "exceptional" stems from Plaintiff's alleged decision not to provide sales information when filing the case and seeking the TRO. However, these arguments fall well short of proving that Plaintiff's claims were baseless or that Plaintiff sued this defendant improperly. Plaintiff brought this suit in good faith, with claims that were meritorious and only recently withdrawn as to this defendant due to a demonstration of no United States sales. Plaintiff's conduct cannot reasonably be seen as an abuse of process or fraud, nor did Plaintiff engage in any behavior intended to inflate litigation costs.

1.    Substantive Strength of Litigation

Lightzey does not argue that this case is exceptional due to the substantive weakness of Plaintiff's claims and litigation position. *See* Motion. However, it claims exceptionality because the evidence of Defendant's infringing sales within the United States is absent. *Id*. Defendant confuses two distinct legal issues: trademark infringement and the Court's personal jurisdiction over Defendant. Plaintiff initiated this action based on Defendant's website, which advertised and offered products embodying Plaintiff's registered trade dress. While Defendant claims to do business primarily in the UK, it has previously shipped a candle holder to Illinois, demonstrating that its products are available to U.S. customers. Chen Decl., ¶ 2.  The question of personal jurisdiction does not negate Plaintiff's reasonable belief that infringement was occurring and needed to be addressed.

2.    Defendant Used Plaintiff's Trademark in the United States

To prevail on a trademark infringement claim under Section 32 of the Lanham Act, Plaintiff must show that Defendant used in commerce, without Plaintiff's consent, any reproduction, counterfeit, copy, or colorable imitation of Plaintiff's valid trademark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). "The commercial use of a mark is not limited to cases where it was attached to a product that was actually sold." *Lettuce Entertain You Enterprises, Inc. v. Leila Sophia AR, LLC*, 703 F. Supp. 2d 777, 784 (N.D. Ill. 2010). Commercial use also extends to advertising and promotional activities. *See Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 434 (7th Cir. 1999) (citing *T.A.B. Systems v. Pactel Teletrac*, 77 F.3d 1372, 1375 (Fed.Cir.1996)).

11

Lightzey's conduct constitutes commercial use of a mark in the United States, even in the absence of completed sales. Through its own website, Lightzey advertises, distributes, offers for sale, and ships products originating from China directly to consumers worldwide, including those in the United States and Illinois. *See* Chen Decl., ¶ 2. By advertising and offering products that infringe the PH5 Trade Dress, Lightzey has engaged in activities that qualify as use in commerce.

Even though Lightzey claims that it primarily conducts business in the U.K., Motion at 1, it does not deny that its website was accessible to and targeted U.S. consumers, including those in Illinois. Defendant's website was designed to reach a global audience, including customers in the United States, as evidenced by its functionality that allowed users to browse, add products to a cart, and proceed to checkout. *See* Exhibit 2 to Chen Decl. The ability of U.S. consumers to access the website and engage with it in this manner supports the conclusion that Defendant was targeting U.S. consumers, thus satisfying the "use in commerce" requirement under the Lanham Act.

The shipment of a candle holder by Lightzey to Illinois further demonstrates that Defendant's products were available to U.S. residents. *See* Chen Decl., ¶ 2. As Plaintiff's counsel told Lightzey, "the screenshot of the candle holder order was intended for internal use only, to confirm that products from this website can be shipped to Illinois." Motion at 6. The relevance of this shipment lies in showing that Lightzey's website was not merely passively accessible but was intended to facilitate transactions with and product delivery to the United States. The fact that the product shipped was non-infringing does not negate the evidence of the website's operational capacity to serve U.S. customers, including those in Illinois.

Overall, the presence of Lightzey's website in the U.S. marketplace, along with its active marketing of infringing products, supports Plaintiff's good-faith belief when this action was filed that Defendant was offering counterfeits that infringe the PH5 Trade Dress in a manner likely to

cause confusion among U.S. consumers. By offering the infringing products for sale in a way that enabled potential U.S. customers to make purchases, Defendant engaged in trademark use that falls within the scope of the Lanham Act.

    3.    Defendant's Motion Conflates Infringement and Personal Jurisdiction

The essence of a trademark infringement claim is whether Lightzey's use of a mark causes a likelihood of confusion, mistake, or deception regarding the origin of the goods. In this case, the relevant question is whether Lightzey's products, as offered on its website, used Plaintiff's registered trade dress in a manner likely to cause consumer confusion. The presence or absence of actual sales within a particular jurisdiction does not determine whether infringement occurred; rather, offers for sale or promotional activity using the protected marks can establish infringement. *See Johnny Blastoff, Inc.*, 188 F.3d at 434.

Personal jurisdiction, on the other hand, concerns whether a court has the authority to adjudicate a case against a defendant. It requires evaluating whether a defendant has sufficient minimum contacts with the forum state. *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 757–58 (7th Cir. 2010) (Personal jurisdiction over the defendant in Illinois was established because the defendant maintained commercial websites through which customers could purchase cigarettes, calculate shipping, and create accounts; therefore the defendant was reaching out to Illinois residents); *see NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 624-625 (7th Cir. 2022), cert. denied, 143 S. Ct. 577, 214 L. Ed. 2d 341 (2023) (Personal jurisdiction in Illinois was established over the defendant that created an online store and using a third-party retailer because through this online store there was a willingness to ship goods to Illinois). Jurisdiction focuses on the defendant's relationship with the state, such as conducting business there or engaging in conduct that intentionally targets

13

the state's residents. *See Hemi Grp. LLC*, 622 F.3d at 757–58; *see also NBA Properties*, 46 F.4th at 624–25.

Lightzey's motion centers on the lack of completed sales to U.S. consumers as evidence that it did not infringe Plaintiff's trademark. However, this conflates infringement with jurisdiction. Under the Lanham Act, infringement can be established through advertising or offering for sale products that use the plaintiff's marks, regardless of whether an actual sale takes place. *See Lettuce Entertain You*, 703 F. Supp. 2d 777, 784 (N.D. Ill. 2010). Courts have consistently held that infringing activity includes not just completed sales, but also attempts to offer or sell products that bear counterfeit or infringing marks. 15 U.S.C. § 1114(1)(a); *see NBA Properties*, 46 F.4th at 624– 25 (A vendor violates the Lanham Act when it *lists* for sale infringing products.)[emphasis added]; ("Infringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." (quoting 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:6 (4th ed. 1997)); *see also* 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:12 (5th ed. 2022). Lightzey's website offered products that infringed Plaintiff's registered marks and allowed consumers, including those in Illinois, to place products in a cart for purchase. *See* Exhibit 2 to Chen Decl. These actions are sufficient to constitute infringement under trademark law, even if no actual sales were finalized in the U.S.

Lightzey incorrectly suggests that because the Court may lack personal jurisdiction over it due to the absence of U.S. sales, Plaintiff's infringement claims are baseless. This is a mischaracterization of the relationship between the two concepts. Even if personal jurisdiction is lacking, that does not mean there was no infringing activity. The potential absence of jurisdiction only impacts the Court's ability to hear the case, not the existence of infringement. Plaintiff's

14

initial decision to file the lawsuit was based on Lightzey's online storefront, which was accessible to Illinois consumers and offered infringing products. This provided a reasonable basis to pursue the case, irrespective of whether personal jurisdiction would ultimately be established.

**B.      Plaintiff Did not Engage in Unreasonable Manner of Litigation**

Lightzey's claims that Plaintiff engaged in an unreasonable manner of litigation are meritless. Lightzey's argument is fundamentally based upon its mistaken conclusion that there was no trademark infringement if there were no sales to the U.S. However, Plaintiff could have had no knowledge of the volume of sales at the outset of this matter, or at any time thereafter until the day in August that Lightzey provided its sales information, since they sell worldwide through their own online store rather than operating through an e-commerce platform. Plaintiff's actions were based on a good-faith belief that Defendant's conduct constituted trademark infringement under the Lanham Act, which covers advertising and offering infringing goods for sale, even in the absence of completed sales. Defendant's assertions of abuse of process and fraudulent misrepresentations fail because Plaintiff adhered to established legal procedures, including the use of an ex parte TRO ordering an asset freeze to prevent asset dissipation—a necessary element of most cases involving online counterfeiters. Plaintiff provided all known and material evidence when it moved for injunctive relief, and acted promptly to dismiss the case once Defendant demonstrated a lack of U.S. sales.

1.      There Was No Abuse of Process

Under Illinois Law, the elements for a cause of action for abuse of process are: "(1) the existence of an ulterior purpose or motive and (2) some act in the use of legal process not proper in the regular prosecution of the proceedings." *Pace v. Timmermann's Ranch & Saddle Shop Inc.,* 795 F.3d 748, 757 (7th Cir. 2015) (quoting *Kumar v. Bornstein,* 354 Ill. App. 3d 159 (2004)). The

tort of abuse of process is disfavored under Illinois law, so the elements must be strictly construed. *Gao v. P'ships & Unincorporated Ass'ns Identified on Sched. "A,"* 21-CV-4055, 2022 WL 1028926, at *6 (N.D. Ill. Apr. 4, 2022) (quoting *Neurosurgery & Spine Surgery, S.C. v. Goldman,* 760 N. E.2d. 925 (Ill. App. 2003)).

The first element requires a showing that proceedings were instituted "for an improper purpose such as extortion, intimidation, or embarrassment." *Kumar,* 354 Ill. App. 3d at 290. Defendant alleges that Plaintiff abuses the TRO to "extort" a settlement from Lightzey. Motion at 10-12. However, the $2,000 settlement offer was an alternative option provided to Lightzey, alongside the request for evidence that Lightzey had no U.S. sales, as stated in Plaintiff's counsel's email on August 29, 2024. Chen Decl., ¶ 3. Lightzey chose to provide the requested evidence in response to that email, leading to the dismissal of the claims. Plaintiff's offer was made in good faith as a path to potential resolution; it was not in any way a "tactic" to coerce Lightzey into a settlement.

The second element requires a showing "that the process was used to accomplish some result beyond the purview of the process." *Gao,* 21-CV-4055, 2022 WL 1028926, at *6. It must be shown that the Court's process was used to compel the opposing party to do something it could not otherwise legally be compelled to do. *Kumar*, 820 N.E.2d at 1175. Defendant fails to allege that Plaintiff has committed an act in "the use of legal process not proper in the regular prosecution of the proceedings." *Id*. Filing the lawsuit and seeking recourse via a TRO constitute "the regular prosecution of the proceedings." *Gao*, 2022 WL 1028926, at *7 (holding that filing a patent infringement lawsuit and obtaining a TRO for asset freeze did not constitute an abuse of process). When the legal process is used in a manner consistent with its purpose, there can be no cause of action for abuse of process. *Id.*

Lightzey asserts that "Plaintiff's litigation conduct demonstrates an egregious abuse of process" by (1) filing the case without purchasing the accused products or otherwise obtaining evidence to establish personal jurisdiction; and (2) "abusing the Court's ex parte procedures using fraudulent misrepresentations of Plaintiff's evidence in order to obtain an unwarranted TRO, with the goal of extorting a settlement from Lightzey." Motion at 9-13.

First. Plaintiff's decision to file this case was based on a reasonable belief that Defendant's conduct violated U.S. trademark laws. Under the Lanham Act, trademark infringement can be established through advertising, offering for sale, or other promotional activities targeting U.S. consumers, even without completed sales. 15 U.S.C. § 1114(1)(a). Defendant's website was actively advertising and offering for sale products that infringe Plaintiff's PH5 Trade Dress, and the website was accessible to U.S. consumers, including Illinois residents. Since Defendant was running its own online store instead of through an e-commerce platform, Plaintiff could not possess Lightzey's sales information until Defendant provided it to Plaintiff. Plaintiff's claim was thus not frivolous or unreasonable, as it was supported by the evidence of Defendant's online marketing of the infringing products and the website's functionality allowing for purchases by U.S. consumers. While the lack of completed sales ultimately led to the dismissal of the case against Defendant, it does not undermine Plaintiff's good-faith basis for filing the lawsuit.

Second, Plaintiff's use of ex parte procedures to obtain a TRO was consistent with established trademark enforcement practices, particularly in cases involving counterfeit goods sold online. The ex parte TRO was necessary to prevent sales of infringing goods and potential asset dissipation through removal of infringing listings requiring an asset freeze, both common practices in preventing further damage caused by online counterfeiters. Plaintiff presented evidence demonstrating Defendant's use of Plaintiff's PH5 Trade Dress on an accessible e-commerce

website targeting U.S. consumers, which justified entry of the TRO. Defendant's assertion of "fraudulent misrepresentations" is unfounded, as Plaintiff provided all the material facts available to it at the time of the motion, including screenshots showing the infringing products being offered for sale by Defendant.

Plaintiff further acted promptly to dismiss the case once Lightzey demonstrated no completed U.S. sales, reflecting Plaintiff's commitment to fair litigation and avoidance of unnecessary proceedings. The voluntary dismissal undermines Lightzey's claim that Plaintiff sought to "extort" a settlement, as Plaintiff's primary goal was to halt the infringing activity, not to engage in coercive settlement tactics.

2.  Plaintiff Acted in Good Faith in Obtaining the TRO

Lightzey's allegations that Plaintiff committed any fraud on the Court are baseless.  A allegation of fraud must comply with the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, which requires parties alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ P. 9(b). Lightzey claims that Plaintiff committed fraud by failing to disclose certain "adverse facts"[2] when filing the Complaint and obtaining the TRO and preliminary injunction. Motion at 14. However, these "adverse facts" are neither adverse nor material to proving trademark infringement, nor has Lightzey cited any authority requiring Plaintiff to disclose such facts when filing a complaint and

---

[2] "1) the Umbrella Pendant Light order was not completed; 2) no Umbrella Pendant Light was shipped to Chicago, Illinois; and 3) the candle holder was indeed shipped to Illinois, which would have triggered the Court's jurisdiction if infringing; but even Plaintiff conceded that the candle holder is not infringing." *See* Motion at 14.

seeking injunctions. Instead, Lightzey opines that the "TRO would not have been issued" had these so-called "adverse facts" been disclosed. Motion at 14.

Lightzey's argument misinterprets the standard for obtaining a TRO and preliminary injunction, especially in an intellectual property matter, as it presumes that Plaintiff was required to disclose facts not relevant to the elements necessary for relief.[3] Motion at 15. In order to obtain a TRO or preliminary injunction, a party must show: "(1) its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted." *See Ty, Inc. v. The Jones Grp., Inc.*, 237 F.3d 895 (7th Cir. 2001). None of these requirements obligate Plaintiff to provide information about those "adverse facts" that are immaterial to the infringement claim or the likelihood of success on the merits.

Plaintiff disclosed all known material facts when seeking the TRO, including evidence of Lightzey's use of Plaintiff's registered trade dress on an interactive e-commerce website accessible to U.S. consumers, including those in Illinois. This evidence, which included screenshots of infringing products available for purchase, was appropriately presented to the Court. *See* [8-4 to 8-21]. While Plaintiff did not itself purchase the accused products, this does not preclude the possibility that Illinois residents may have made such purchases. The Lanham Act does not require completed sales to demonstrate infringement. The absence of completed sales, while relevant to personal jurisdiction, was not a material fact that would have prevented the grant of the TRO. Offers for sale or advertisements of infringing products suffice to establish "use in commerce," thus justifying the TRO.

---

[3] "Plaintiff intentionally failed to disclose these materials facts to obtain the TRO, committing fraud on the Court." See Motion at 15.

Plaintiff's disclosures were accurate, complete, and sufficient based on the information available at the time, and the injunctive relief was correctly ordered.

### C.     Attorney's Fees Requested Are Unreasonable

As this is an unexceptional case, Attorney's fees should not be granted to Defendant. Plaintiff's conduct of this case has been reasonable and within the boundaries of the law and the Rules. Assuming, *arguendo*, that the Court concluded a fee award is appropriate, the Defendant's fee request is objectionable and entirely unreasonable. The starting point for a court's evaluation of a fee request "is a lodestar analysis; that is, a computation of the reasonable hours expended multiplied by a reasonable hourly rate." *Hirsch v. Will Cnty.*, 19 CV 7398, 2023 WL 6809609, at *5 (N.D. Ill. Oct. 15, 2023) ). Although the lodestar yields a "presumptively reasonable fee," World Outreach Conf. Ctr. v. City of Chicago, 896 F.3d 779, 783 (7th Cir. 2018), after the lodestar calculation, the court "may determine whether an adjustment is warranted under the case-specific circumstances." Nichols v. Illinois Dep't of Transportation, 4 F.4th 437, 441 (7th Cir. 2021).

Defendant's Counsel has sent Plaintiff the billing record in attorney's fees incurred in communication, Motion for Pro Hac Vice, Motion for Attorney's fees, and preparing and attending hearing. Specifically, Defendant seeks to recover the following fees for the works for its four attorneys.

| Attorney | Hourly Rate | Number of Hours | Total |
|---|---|---|---|
| Bai J Bemjamin | $1,100 | 89.6 | $ 98,560 |
| Wang Yamei | $450 | 3.9 | $ 1,799 |
| Paul Keller | $1,200 | 26 | $ 31,200 |
| ElissaTenenbaum | $775 | 12 | $ 9,300 |

Here is a summary of Opposing Counsel's time entries for every claimed time entry:

| Attorney | Pre-filing | Motion for Pro Hac Vice | Motion for Attorney's fees | Hearing and Preparation |
|---|---|---|---|---|
| Bai J Bemjamin | 37.6 h | 1.7 h | 50.3 h | 0.0 h |
| Wang Yamei | 3.9 h | 0.0 h | 0.0 h | 0.0 h |
| Paul Keller | 5.5 h | 0.0 h | 19.0 h | 2.0 h |

| ElissaTenenbaum | 0.0 h | 1.5 h | 9.5 h | 1.5 h |
| Total Hours | 47 h | 3.2 | 78.8 h | 3.5 h |

Plaintiff's specific objections to each time entry are outlined in the attached exhibits: Exhibit A (Objections to pre-filing time entries), Exhibit B (Objections to time entries related to the Motion for pro hac vice), and Exhibit C (Objections to time entries related to the Motion for Attorney's fees). Plaintiff objects Defendant's fee request, notwithstanding that this defendant is not entitled to recover any fees at all because: (1) the claimed hourly rate claimed by Defendant's Counsel is objectively unreasonable in the Northern District of Illinois; and (2) the number of hours expended are unreasonable and unconscionable; and most work should have been performed by non-lawyers at lower rates.

### 1. Defendant Claims Unreasonably High Hourly Rates

The Seventh Circuit, like the Ninth Circuit, uses the Lodestar method to determine the reasonableness of fees, and the hourly rates to be used are the prevailing rates in the local community. *See Blum v. Stenson*, 65 U.S. 886, 897 (1984). In the context of a fee petition, a reasonable hourly rate is "one that is 'derived from the market rate for the services rendered.' " *Melikhov v. Drab*, No. 16 C 9332, 2018 WL 3190824, at *3 (N.D. Ill. May 21, 2018) (quoting *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011)); *see Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014) ("A reasonable hourly rate is based on the local market rate for the attorney's services."). The party seeking fees bears the burden of "produc[ing] satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." *Spegon v. Cath. Bishop of Chi.*, 175 F.3d 544, 555 (7th Cir. 1999) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

Defendant's counsel did not submit their own affidavits to meet their burden to support their claimed hourly rates. The prevailing hourly rate in Illinois for IP related works according to

an anonymized survey of hours recorded in the Clio Law Practice Management System is $407. *See* Chen Decl., ¶ 8. Even if the "community" were defined as trademark litigators in Chicago, Counsel's claimed rates are well in excess of those charged by other attorneys in the field. *Id.* Considering the "community" solely as trademark litigators in Chicago, Lightzey's Counsel's claimed rates are well in excess of those charged by other attorneys in this District. *Id.*

The hourly rate should be reduced where appropriate to reflect the work performed, rather than the billing rate of the person who performed it. *Bell v. United Princeton Properties, Inc.,* 884 F.3d 713, 722 (3d Cir. 1989) (holding that reduced rate appropriate for work that could have been performed by other, less costly professionals). Defendant's claimed rates are excessive and unsupported, with $1,200 per hour for a partner in New York, $775 per hour for a relatively junior associate in Illinois, $1,100 per hour for a partner in China, and $450 per hour for an associate in China.

Defendant references a general report on hourly rates from AMLAW100 law firms but fails to provide any specific explanation why those rates should be applicable to their work in this case. Chen Decl. ¶ 7. For instance, Crowell & Moring LLP ("Crowell"), ranked 84th on the American Lawyer's 2024 Am Law 200 list, has an average partner rate of $795 and an average associate rate of $590. In the field of intellectual property, the average partner rate is $878, and in litigation, it is $840. *Id*. Despite this, Crowell's Chicago associate, who has less than five years of experience, is billing close to an average partner's rate, and the partner is charging far above market averages. *Id*. Additionally, attorneys from King & Wood Mallesons LLP, based in China and having unspecified experience in U.S. IP litigation, provide no justification for their exceptionally high rates. *Id*.

22

There is no explanation of how these rates are commensurate with the complexity or nature of the work performed, nor any comparison to prevailing market rates for similar legal services in Chicago. Because of this, the Court should be skeptical of their rates and, if it were to determine a fee award was appropriate (it is not), The Court should normalize those fees to at most Ms. Tenenbaum's rate, which is higher than even Mr. Judge, who has been practicing for 28 years.

        2.      The claimed Hours expended by Defendant's Counsel Are Unreasonable

The party seeking a fee award must submit its billing records and "bears the burden of proving the reasonableness of the number of hours worked." *Hirsch v. Will Cnty.*, 19 CV 7398, 2023 WL 6809609, at *7 (N.D. Ill. Oct. 15, 2023) (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 518 (7th Cir. 1993)). The moving party must also "exercis[e] billing judgment, which means they must 'exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary.' " *Melikhov v. Drab*, No. 16 C 9332, 2018 WL 3190824, at *2 (N.D. Ill. May 21, 2018) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

"What qualifies as a 'reasonable' use of a lawyer's time 'is a highly contextual and fact specific enterprise,' and the court has 'wide latitude' in awarding attorney's fees." *Melikhov*, 2018 WL 3190824, at *4 (quoting *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010)). Among other things, the Court must assess the attorneys' time entries and must exclude from the lodestar hours that are excessive, redundant, vague, inadequately documented or otherwise unnecessary. *Hensley*, 461 U.S. at 434. The Court must also carefully " 'scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.' " *Johansen v. Wexford Health Sources*, No. 15-CV-2376, 2021 WL 1103349, at *7 (N.D. Ill. Mar. 23, 2021) (quoting *Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009)).

Here, Defendant seeks to recover fees for 132.5 hours of attorney work in communication, Motion for Pro Hac Vice, Motion for Attorney's fees, and preparing for and attending a hearing. The requested hours are unreasonable and disproportionate. The volume of hours claimed is excessive and grossly disproportionate, especially given the straightforward nature of the underlying case. In a matter that does not involve complex factual or legal issues, billing such an extensive amount of time indicates inefficiency and overstaffing.

Defendant's Counsel has billed 47 hours before filing any documents with the court. It is unclear what substantive work justifies this amount of time, particularly since it does not appear to involve substantial research or document preparation that would warrant such a high investment of attorney hours. Further, spending 78.8 hours on a Motion for Attorney's Fees in a case with simple facts is indefensible. Drafting a fee motion should not require extensive legal research or significant collaboration among multiple attorneys. Such motions are routine and should be completed efficiently, with a reasonable allocation of time that reflects the straightforward nature of the arguments and facts. Without a detailed justification for these inflated hours, Defendant's fee request appears to be an unreasonable and unjustified attempt to increase costs unnecessarily.

a)      <em>Duplicative and Redundant Work</em>

Duplication of effort is not compensable. *Eagle Forum v. Phyllis Schlafly's American Eagles,* 498 F. Supp. 3d 1024, 1047 (S.D. Ill. 2020). In this case, Defendant's fee request reveals numerous instances of overlapping and redundant work. The billing records show that multiple attorneys repeatedly engaged in the same activities, such as reviewing sales information and conducting jurisdictional analysis, without any explanation of why such duplication was necessary. Tasks that should have been straightforward, like verifying the client's sales data, were performed

multiple times by different attorneys. These inefficiencies suggest a lack of proper coordination and effective case management, unnecessarily inflating the overall fee request.

For example, Defendant's Counsel has multiple time entries for checking their client's sales information.

| No. | Date | Attorney | Description of Work | Hours worked |
|---|---|---|---|---|
| 3 | 2024/7/24 | Bai J Benjamin | Work with client to determine **sales** info for defendant, thelightzey (owned by Waves HK); double check with client regarding no **sale** to US by defendant. | 1.8 |
| 7 | 2024/8/5 | Bai J Benjamin | Review case law on internet jurisdiction; communicate with Daisy Hua regarding **sales** to US and Illinois; draft response to opposing counsel (Zareefa Flena) regarding lack of sale and lack of jurisdiction. | 2.5 |
| 8 | 2024/8/5 | Bai J Benjamin | Review and analyze evidence provided by opposing counsel (Zareefa Flena); review case law on internet jurisdiction; communicate with Daisy Hua to confirm lack of **sales** to US and Illinois; draft response to opposing counsel (Zareefa Flena) regarding lack of sale and lack of jurisdiction and offer to sign undertaking not to sell to the US in exchange for unfreezing of PayPal account. | 3.3 |
| 10 | 2024/8/10 | Bai J Benjamin | Work with Daisy Hua and collect US **sales** evidence; review same and consider relevant issues; consider best way to convince opposing counsel of lack of jurisdiction. | 1.8 |
| 15 | 2024/8/27 | Wang Yamei | Attend to reply email from the opposing counsel re request of the **sales** information; compare accused infringing product with the product reflected in evidence. | 0.5 |
| 20 | 2024/8/29 | Wang Yamei | Review the screenshots provided by Daisy Hua re **sales** records of accused infringing product, consider necessary information to be disclosed to opposing counsel, consider related issues. | 1.1 |
| 21 | 2024/8/29 | Bai J Benjamin | Review response from opposing counsel; discuss with Daisy Hua regarding **sale** info; review various screen shots provided by client; call with client regarding same; analyze screenshots for unnecessary information and personal information for Chinese law compliance; share same with Paul Keller and communicate with same; review case law on exceptional cases for TM cases in 7th Circuit; respond to opposing counsel. | 5.2 |
| 25 | 2024/9/1 | Bai J Benjamin | Detailed review of client's screenshots of **sales** info; provide same to opposing counsel; consider strategy to effect dismissal; review relevant ethics rules on lawyer's duty of | 3.5 |

| | | | honesty to court and duty not to mislead court; review relevant Illinois case law on lawyer's duty of candor towards the court; review ethics rules on lawyer's duty of candor in ex parte TRO; draft email to urge opposing counsel to dissolve TRO; discuss with Paul Keller regarding same. | |
|---|---|---|---|---|

Additionally, excessive time was spent on jurisdictional analysis, which should not have taken an experienced attorney more than a fraction of the time billed.

| No. | Date | Attorney | Description of Work | Hours worked |
|---|---|---|---|---|
| 5 | 2024/8/2 | Bai J Benjamin | Detailed consideration of James Judge's email of July 30; discuss with client regarding lack of US sales; draft email to James Judge regarding lack of US sales and thus lack of **jurisdiction**. | 2.1 |
| 7 | 2024/8/5 | Bai J Benjamin | Review case law on internet jurisdiction; communicate with Daisy Hua regarding sales to US and Illinois; draft response to opposing counsel (Zareefa Flena) regarding lack of sale and lack of **jurisdiction**. | 2.5 |
| 8 | 2024/8/5 | Bai J Benjamin | Review and analyze evidence provided by opposing counsel (Zareefa Flena); review case law on internet **jurisdiction**; communicate with Daisy Hua to confirm lack of sales to US and Illinois; draft response to opposing counsel (Zareefa Flena) regarding lack of sale and lack of **jurisdiction** and offer to sign undertaking not to sell to the US in exchange for unfreezing of PayPal account. | 3.3 |
| 10 | 2024/8/10 | Bai J Benjamin | Work with Daisy Hua and collect US sales evidence; review same and consider relevant issues; consider best way to convince opposing counsel of lack of **jurisdiction**. | 1.8 |
| 49 | 2024/10/4 | Bai J Benjamin | Review docket entry in NDIL Case No.: 1:24-cv-08789 regarding denial by Honorable John Robert Blake of TRO for lack of personal **jurisdiction** over foreign defendant; consider its relevance; circulate same to co-counsel for consideration and inclusion in memo of law. | 1.7 |

Second, multiple attorneys worked on the same tasks, with entries showing two partners and two associates spending excessive amount of time on identical assignments. Defendant has not provided any reasonable explanation for why so many high-billing attorneys were necessary for these tasks or offered a justification for this significant duplication of effort. The involvement

of multiple attorneys on straightforward assignments not only inflates the total hours billed but also unnecessarily increases the costs associated with this litigation.

For instance, Defendant's Counsel frequently convened to discuss strategy, holding numerous conversations that seemed focused solely on deliberating general matters that were only tangentially related to the core issues of the case. Moreover, the drafting of the Motion for Attorney's Fees involved two partners and an associate working together, which is inherently unreasonable. The task of drafting such a motion is neither complex nor novel enough to warrant collaboration among multiple attorneys at this level. This extensive and redundant involvement, especially for a motion of this nature, exemplifies a lack of cost-effective case management and supports a strong argument for a significant reduction in the fees requested.

### b) Excessive Time Entries

Several individual time entries are excessive given the nature of the tasks described. The amount of time billed for routine or straightforward assignments is disproportionate to the actual time required and lacks any justification. Defendant's fee request includes entries that do not align with reasonable billing practices, for example, an experienced attorney requiring hours to draft a one-page motion for admission *pro hac vice* on a court form indicates a propensity for inefficiency or overbilling. Defendant's counsel have also not supplied the declarations or affidavits required under the rule that the Defendant has paid them these amounts. Without detailed explanations for these inflated time entries, the fees appear unreasonable and unjustified.

| No. | Date | Attorney | Description of Work | Hours worked |
|-----|------|----------|---------------------|--------------|
| 28 | 2024/8/6 | Bai J Benjamin | Work on pro hoc vac application in NDIL. | 1.7 |
| 29 | 9/23/2024 | ETenenbaum | Meet with P. Keller re drafting exceptional motion for re LOUIS POULSEN A/S Litigation, NDIL-24-cv- 04260: Thelightzey (Doe #425); Draft pro hac application re LOUIS POULSEN A/S Litigation, NDIL-24-cv-04260: Thelightzey (Doe #425) | 0.5 |

27

| 30 | 10/09/2024 | ETenenbaum | Draft and file P. Keller's amended pro hac vice application for LOUIS POULSEN A/S Litigation, NDIL- 24-cv-04260: Thelightzey (Doe #425). | 1.0 |

As another example, Mr. Bai billed 1.3 hours for "Communication with opposing counsel regarding merchant identify; discuss with client regarding same." However, the communication and discussion occurred only because Defendant's counsel sent the wrong case number to Plaintiff's counsel initially. *See* Exhibit A, item 2.

### c) *Unnecessary Time Entries*

The billing records reflect several instances of unnecessary time entries, which suggest an unjustified inflation of the overall fee request. Specifically, Mr. Bai billed 1.3 hours for "Communication with opposing counsel regarding merchant identity; discuss with client regarding same." This time entry is unwarranted because the communication and subsequent discussion only occurred as a result of Defendant's counsel providing the wrong case number to Plaintiff's counsel. In essence, the error on the part of Defendant's counsel generated additional work, and billing Plaintiff for correcting this mistake is unreasonable. *See* Exhibit A, item 2.

Moreover, Ms. Wang's time entries represent duplicative, non-substantive work that added no discernible value to the case. Her routine reviews were already covered by senior attorneys, making her involvement unnecessary and inefficient. There is no evidence in the invoices that her work contributed meaningfully to the advancement of the case. Moreover, after reviewing these documents and emails, she did not perform any follow-up or substantive work, which raises concerns about the value of her contributions. Clients should not be charged for attorney familiarization.

Furthermore, Mr. Keller and Ms. Tenenbaum billed 3.5 hours for preparing for and attending a hearing. However, their contributions at the hearing were limited to brief self-

28

introductions without any substantive statements or arguments. This entry should be eliminated, as it fails to reflect necessary or impactful work.

## IV.    CONCLUSION

Considering the totality of the circumstances, this case is not "exceptional" or "rare"in terms of the substantive strength of Plaintiff's litigation position or the manner in which Plaintiff litigated this case. Even if the matter rose to the level of being "exceptional" as required by 15 U.S.C. §1117(a), which it does not, the fees claimed by Defendants' counsel are plainly unreasonable and objectionable. Therefore, Plaintiff respectfully requests that the Court deny Defendant Lightzey's Motion for Attorneys' Fees.

Dated: October 31, 2024                                  Respectfully Submitted,

<u>/s/ Ying Chen</u>
Zareefa B. Flener (IL Bar No. 6281397)
James E. Judge (IL Bar No. 6243206)
Ying Chen (IL Bar No, 6346961)
Flener IP Law, LLC
77 W. Washington St., Suite 800
Chicago, IL 60602
(312) 724-8874
jjudge@fleneriplaw.com